Citation Nr: 1505520 
Decision Date: 02/05/15 Archive Date: 02/18/15

DOCKET NO. 08-10 467 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for posttraumatic stress disorder (PTSD), for the period from March 20, 2003, through October 27, 2005. 

2. Entitlement to a rating in excess of 30 percent for PTSD, for the period from October 28, 2005 to October 31, 2007. 

3. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

R. Costello, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1968 to June 1971. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Nashville, Tennessee, Regional Office (RO) of the Department of Veterans Affairs (VA). The January 2005 rating decision granted an original award of service connection for PTSD, with assignment of a 10 percent disability rating, effective March 20, 2003. In an October 2005 statement, the Veteran sought an increased rating. In the February 2006 rating decision, the Veteran's initial rating was increased to 30 percent, effective from October 28, 2005. A timely appeal was filed with respect to this rating as well. 

During the course of this appeal, in November 2007, the RO again increased the Veteran's PTSD disability rating to 50 percent, effective November 1, 2007. The Veteran timely appealed the effective date of the 50 percent rating. However, in an April 2010 decision, the Board dismissed any appeal for a rating in excess of 50 percent, for the period from November 1, 2007, after the Veteran withdrew such an appeal. Therefore, only the earlier time periods remain on appeal. The Board also remanded for further development his claims for higher ratings for the two earlier time periods. 

A separate claim for a TDIU was received in November 2010. In a May 2011 rating decision, the RO denied the Veteran's TDIU claim. In June 2011, the Veteran noted his disagreement with the May 2011 rating decision, and he perfected his appeal in July 2012.

In an August 2012 rating decision found on the Veteran's electronic eFolder, the RO granted the Veteran a 70 percent disability rating for his PTSD, effective July 2, 2012. Neither the 50 percent nor the 70 percent ratings are the subject of the current appeal before the Board. 

This matter was again remanded by the Board in January 2014 for additional development. It has now returned to the Board for appellate review. The Board finds there is compliance with both prior remands. Additional medical records were obtained following the 2010 Remand, and a 2014 VA psychiatric examination report addressed the questions the Board raised in the 2014 Remand.


FINDINGS OF FACT

1. From March 20, 2003, through October 27, 2005, the Veteran had PTSD that caused occupational and social impairments with occasional decrease in work efficiency despite an ability to generally function satisfactorily at work and at home due to anxiety, irritability, and sleep difficulties.

2. From October 28, 2005 to October 31, 2007, the Veteran had PTSD that caused occupational and social impairments with reduced reliability and productivity due to depressed mood, anxiety, irritability, sleep difficulties, and frequent and severe impairment in work, family, and other relationships. 

3. The Veteran is rendered unable to secure and follow a substantially gainful occupation by reason of his service-connected disabilities.


CONCLUSIONS OF LAW

1. From March 20, 2003, through October 27, 2005, the criteria for a disability rating of 30 percent, and no higher, for PTSD were met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.126, 4.130, 4.21, Diagnostic Code 9411 (2014).
 
2. From October 28, 2005 to October 31, 2007, the criteria for a disability rating of 50 percent, and no higher, for PTSD were met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.126, 4.130, 4.21, Diagnostic Code 9411 (2014).

3. A total disability rating for compensation based upon individual unemployability due to service-connected disabilities is warranted. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The award of service connection for PTSD represented a substantiation of the Veteran's original claim, and thus the filing of a notice of disagreement with the initial rating assigned did not trigger additional 38 U.S.C.A. § 5103(a) notice requirements. Therefore, any defect as to notice is not prejudicial. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); see also Goodwin v. Peake, 22 Vet. App. 128, 134 (2008). Moreover, the Veteran was notified of regulations pertinent to the establishment of a disability rating and an effective date in an April 2003 letter. Dingess/Hartman, 19 Vet. App. at 478.

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records, private medical records, and VA medical records have been obtained. Also, the VA psychiatric evaluations of the Veteran's PTSD in December 2004, February 2006 and August 2014 and their associated reports were adequate because, as discussed below, they were based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and because they provided detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). 

Therefore, VA has satisfied its duties to notify and assist, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

II. Increased Rating

The Board has reviewed all of the evidence in the claims folders. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to these claims.

The Veteran asserts that he is entitled to an initial disability rating in excess of 10 percent for his service-connected PTSD for the period from March 20, 2003, through October 27, 2005, and is entitled to a disability rating in excess of 30 percent for his service-connected PTSD for the period from October 28, 2005, to October 31, 2007. Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 38 U.S.C.A. § 1155.

Disability evaluations are determined by comparing a veteran's present symptoms with the criteria set forth in the VA Schedule for Rating Disabilities, which is based upon average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential that the disability be considered in the context of the entire recorded history when determining the level of current impairment. See 38 C.F.R. § 4.1. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Nevertheless, where the veteran is appealing the rating for an already established service-connected condition, his present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

PTSD, as a psychiatric disability, is evaluated under a general rating formula for mental disorders. 38 C.F.R. § 4.130, Diagnostic Code 9411. All psychiatric disabilities are evaluated together regardless of the diagnoses. In situations where PTSD is formally diagnosed, but its symptoms are not severe enough either to interfere with occupational and social functioning, or to require continuous medication, a noncompensable rating is warranted. Id. 

A compensable 10 percent rating is warranted when there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medications. Id. 

A higher 30 percent disability rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). Id. 

A higher 50 percent disability rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficult establishing and maintaining effective work and social relationships. Id. 

A higher 70 percent disability rating is assigned where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. 

The next and highest 100 percent disability rating is assigned where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

When determining the appropriate disability evaluation to assign, the Board's primary consideration is a veteran's symptoms, but it must also make findings as to how those symptoms impact a veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, length of remissions, and the veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. However, when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation on the basis of social impairment. 38 C.F.R. § 4.126(b).

The Global Assessment Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996). A score of 31 to 40 reflects some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. A score of 41 to 50 is assigned where there are "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV) 47 (4th ed. 1994). A score of 51 to 60 is appropriate where there are "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. A GAF score of 61 to 70 indicates the examinee has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions pretty well with some meaningful interpersonal relationships. Id. at 46. While particular GAF scores are not contained in the VA schedule of ratings for mental disorders, 38 C.F.R. § 4.130, they are a useful tool in assessing a Veteran's disability and assigning disability evaluations. However, they are just one of many factors considered when determining an evaluation.

[As an aside, although an interim final rule was recently published updating outdated references to DMS-IV and certain nomenclature used to refer to certain mental disorders, this rule does not apply to cases certified to and pending before the Board, such as this one. See 79 Fed. Reg. 45093 (August 4, 2014).]

It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21.

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, including degree of disability, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3 

The Veteran was afforded a VA examination in December 2004, documented in January 2005. At that time he reported he had a good marriage and denied any recent history of marital discord or distress. He maintained positive relationships with his sons, had a few friends, but indicated that he was not a trusting soul and tended to keep his distance from people. He reported he quit drinking and his only hobby was farming. His mood was up and down and he had recurrent intrusive thoughts about his experiences in Vietnam. He was having nightmares, but was vague in describing the content of his dreams. He stated he woke up startled and assumed that he had a nightmare, but could not remember the content of the dream. He described waking up several times each night and getting about 5-6 hours of sleep a night. He avoided cues that remind him of his experiences in Vietnam and reported decreased concentration, irritability, anger, feelings of detachment for others, exaggerated startle response, and feelings of guilt. He denied pervasive symptoms of depression, suicidal ideation, symptoms that would be suggestive of manic episodes, panic attacks, ritualistic behavior, hallucinations, or any other symptoms that would be suggestive of psychosis. 

On mental status evaluation, the Veteran's appearance, hygiene, and behavior were noted to be appropriate. The Veteran's speech, attention, concentration, memory, thought process, insight, and judgment all appeared to be normal. The examiner found there was no compelling evidence to suggest the Veteran may have tended to minimize his symptoms, but there was considerable avoidance that he did exaggerate his symptoms, thus the examiner noted his clinical interpretation was rendered with the disclaimer that there may be some overstatement of symptomology. The examiner noted the Veteran exhibited evidence of depression, anxiety, peculiarities in thinking and experience, and somatic concerns. The Veteran was suspicious and hostile to interpersonal relationships and exhibited numbing of responsiveness. The examiner noted a diagnosis of PTSD, assigned a GAF score of 70, and noted the Veteran's PTSD had a mild to moderate impact on the Veteran's social and vocational functioning. 

VA treatment records show that the Veteran had been receiving somewhat consistent mental health treatment from September 2005 through January 2006. At that time, the Veteran first came into a Vet Center upon referral from another Veteran for assessment to increase his PTSD disability above 10 percent. He presented with sleeping problems, intrusive thoughts, fear of crowds, depression, anxiety, and isolation. 

Another September 2005 Vet center treatment record noted the Veteran had an intake GAF score, in September 2005, of 47 and closing score, in September 2006 of 52. 

In early October 2005, the Veteran underwent a Mississippi scale for combat-related PTSD at a VA medical center. The Veteran reported he was rarely able to get close to others, was likely to become violent if pushed too far, and noted if something happens that reminds him of the military he becomes distressed and upset. He further reported he sometimes has nightmares, rarely enjoys the company of others, was rarely able to get close to others, and was not suicidal. The Veteran also indicated he was sometimes a very easy going, even tempered person. He scored a 121 on the scale, which was well above the cutoff score of 107 for PTSD. 

After the Mississippi scale for combat-related PTSD record, an October 2005 Vet center treatment record noted the Veteran reported he had problems sleeping and increased dreams. The record noted the Veteran had increased symptoms since his last visit due to writing a statement in support of his increase rating claim. 

A subsequent October 2005 Vet center treatment record noted the Veteran reported sleep problems, isolation, intrusive thoughts, dislike of crowds, depression and anxiety. He stated he had no close friends. Upon mental status evaluation, it was noted his appearance, manner speech, orientation, and intelligence were normal. His short term memory was impaired and he did not show signs of delusions, disorganized thinking, hallucinations, or suicidal thoughts. 

The Veteran was afforded a private PTSD assessment on October 28, 2005. The Veteran presented with depression, anxiety, recurrent and intrusive thoughts, nightmares, fear of crowds, startled response, impacted grief, sadness, and difficulty sleeping. He further had diminished interest or participation in significant activities, isolation, and fear of crowds. The assessment noted the Veteran had a GAF score of 43. 

The Veteran was afforded another examination in February 2006. The Veteran reported his ability to cope had worsened over the year. His marriage was ok, as long as he and his wife stayed in separate rooms. He had no friends and all he did was work as a foreman on a railroad and take care of his home, which was a seven acre farm where he raised a few heads of cattle part time. He noted he was having more conflicts at work. He reported no suicidal attempts, assaults, or drinking alcohol since his last examination. The Veteran stated he experienced recurrent and intrusive distressing recollections, nightmares, and intense psychological distress at exposure to internal or external cue that symbolize or resemble an aspect of the traumatic event. He suffered with avoidance of thoughts, feelings, conversations, activities, places, or people that arouse recollections of trauma. He had a markedly diminished interest or participation in significant activities and was unable to have loving feelings. He had irritability, difficulty concentrating, hypervigilance, and exaggerated startle response. 

On mental status examination, the Veteran's appearance, hygiene, and behavior were noted to be appropriate. He had fair impulse control, but the examiner found the Veteran had episodes of violence that have been frequent; he was easily provoked. No hallucinations were observed, nor was a history of such noted. Obsessional rituals were absent and thought processes were appropriate. Further, no panic attacks were observed. Judgment was not impaired and thinking and memory were within normal limits. The examiner noted the attributes the Veteran attributed to stress exposure were anger, irritability, anxiousness, trustfulness, isolation, and avoidance. Continued diagnoses of PTSD, moderate to severe, and a GAF score of 46 was assigned. The examiner noted that the Veteran's PTSD symptoms caused occasional and moderate impairment in efficiency, productivity, reliability, and ability to perform work tasks. The examiner further found the Veteran's PTSD caused frequent and severe impairment in work, family and other relationships. Specifically, noting the Veteran had poor social interaction and increased conflict at work since his last VA examination. 

A September 2006 Vet center treatment record noted the Veteran had not been seen at the Vet Center since January 2006. 

A February 2007 statement from Dr. W.J.L. noted he first met the Veteran after giving him a VA mental health examination. After that, the Veteran chose to follow up for ongoing treatment with Dr. W.J.L. at his private office. He was seen every four to eight weeks beginning in March 2006. The Veteran was encouraged to begin antidepressant medication to help with his frustration tolerance. It was noted that generally the Veteran had a stoic emotionality and flat affect, but it was through avoidance and his stoic effort that he managed to maintain employability. His PTSD symptoms reflect severe intensity and chronic duration. 

Also of record is an August 2014 VA mental health examination. The examiner noted the October 2005 Mississippi PTSD Scale test reflected that the Veteran endorsed items suggesting clear psychosocial functioning problems that related to PTSD symptoms, which included propensity toward aggressive and violent behavior and noted social withdrawal. The examiner noted the VA examination conducted in December 2004 noted the veteran had mild to moderate symptoms and while the Veteran had temper problems, it did not interfere with successful occupational functioning. The examiner further noted treatment from December 2004 to October 2007 noted some deterioration in functioning, with the Veteran being awarded GAF scores of 46 in February 2006 and 55 in a November 2007 VA examination. The examiner found those findings suggest some "more serious problems" in occupational functioning and social functioning. The examiner noted treatment records from March 2006 to February 2007 noted ongoing PTSD symptoms and found description provided in notes "might" reflect GAF in the 51-60 range. 

The examiner further examined the changes in the Veteran's assigned GAF scores. He noted a December 2004 (documented in January 2005) VA mental health examination gave the Veteran a GAF score of 70, which he stated reflected mild to moderate impairment. The Veteran was given a GAF score of 46 during a February 2006 VA mental health examination and a GAF score of 55 during a November 2007 VA mental health examination. The examiner found the scores of 46 and 55 were based on either increased symptoms or poor psychosocial functioning descriptions elicited during the evaluations. He noted GAF scores in the mid 50's reflect moderate difficulty in more than one area of psychosocial functioning, and in the Veteran's case it would include family and social occupational functioning problems, while scores below 50 reflect more serious impairment. He noted all the Veteran's evaluations were done by different evaluators and GAF assessment can be "unreliable across different clinicians, and specific to the way the veteran presents himself." He stated the scores of 46 and 55 were not clinically very different from one another. He further noted it was not uncommon for there to be increasing difficulties over time, as seems to be the case with the Veteran. The examiner points out that in the context of the Veteran's clinical history, it was his initial PTSD VA examination that reflected the highest GAF score and the only time in the record where his social and occupational impairment might be described as mild to moderate. He found treatment records from September 2005 to September 2006 reflected no description of positive life changes that might reflect minimal symptom pattern. 

The examiner concluded that there was "no discernible indication in the record that might differentiate obtained GAF scores and commensurate clinical descriptions" from March 2003 through October 2005, and from October 2005 to October 2007 nor was there a time period proximate to the referenced time frame where PTSD symptom acuity differed significantly to such a degree that one could discern notable increases or decreases in symptom pattern. As such, the examiner concluded there was either insufficient information in the record to assign appropriate GAF scores factually for the referenced periods or reflect a clinically pertinent opinion regarding descriptions of functioning not compared with established GAF scores. He further concluded he was unsure how any specific details would lend more information regarding the course of the Veteran's PTSD than do the multiple existing VA examinations. 

Based on the evidence of record, the Board finds that from March 20, 2003, through October 28, 2005, a disability rating of 30 percent for service-connected PTSD is warranted. In this regard, the Board acknowledges that from March 20, 2003, through October 28, 2005 the Veteran was noted to suffer from subjective symptoms of recurrent intrusive thoughts, nightmares, sleeping problems, avoidance, depression, anxiety, fear of crowds, isolation, decreased concentration, irritability, anger, detachment, distrust, guilt, and exaggerated startled response. Additionally, the December 2004 VA examiner indicated that the Veteran's PTSD symptoms represented a disability of mild to moderate social and vocational functioning and awarded the Veteran a GAF score of 70, and as noted above, the Board has found him competent to make such a determination. Furthermore, the August 2014 VA examiner noted the December 2004 VA examination report suggested that while the Veteran had temper problems, it did not interfere with successful occupational functioning. 

The Board considered whether a higher 50 percent rating would be warranted during this period, but found this rating inapplicable due to the fact that there was no evidence of forgetfulness, or impairment in judgment or thinking. Additionally, the Veteran reported he had a good marriage and had a hobby, farming. He also kept in contact with other veterans as evident by his referral to the Vet center by another Veteran. Although a September 2005 Vet center treatment record noted the Veteran had an intake GAF score of 47, the Board finds the GAF score of 47 to be outweighed by the evidence indicating that he did not have symptoms of such nature or severity as to warrant a rating in excess of 30 percent. As noted above, GAF scores are just one piece of medical evidence to consider in determining the Veteran's disability rating. Moreover, the August 2014 VA examiner explained GAF assessment and establishment of specific GAF scores can be very unreliable across different clinicians, and specific to the way the Veteran presents himself. Moreover, the examiner noted that the Veteran's symptoms have not changed significantly to such a degree during this period that one could discern notable increases or decreases in symptom pattern, thus a staged rating during this period would not be warranted. Therefore, the Board finds that a disability rating of 30 percent for the period from March 20, 2003, through October 27, 2005 for service-connected PTSD is warranted. 38 C.F.R. § 4.130, Diagnostic Code 9411.

However, with additional worsening of the Veteran's PTSD symptoms since the conclusion of this period, the Board finds a 50 percent rating warranted for the period from October 28, 2005, to October 31, 2007. In this regard, the Board notes that on October 2005 private PTSD assessment and February 2006 VA examination, the Veteran reported symptoms of intense psychological distress at exposure to internal or external cues, further markedly diminished interest or participation in significant activities, and hypervigilance in addition to the symptoms he had noted during his previous VA examination and during Vet center treatment. He was assigned GAF scores of 43 and 46. The February 2006 VA examiner noted the Veteran's PTSD symptoms caused frequent and severe impairment in work, family and other relationships. The Board finds the Veteran experienced a decline in his mental status despite being able to hold a job and tend to his farm part-time during this period. He also was now more easily provoked with violent outbursts. Additionally, it was noted that the Veteran was awarded a 50 percent rating for his PTSD in November 2007. The August 2014 VA examiner commented that the Veteran was given a GAF score of 46 in a February 2006 VA examination and given a GAF score of 55 in a November 2007 VA examination. The August 2014 examiner found the GAF scores of 46 and 55 were not clinically very different, stating both suggested some serious problems in occupational and social functioning. Therefore, the Board finds that a disability rating of 50 percent beginning from October 28, 2005, for service-connected PTSD is warranted. Id.

The Board has considered the Veteran for a higher 70 percent rating from October 28, 2005, but found no basis for such an increase. Although the Veteran remained married, he reported his marriage was ok as long as him and his wife stayed in separate rooms. The treatment records do not document during the relevant period the type of symptoms contemplated by the criteria for a 70 percent evaluation, such as suicidal ideation, obsessional rituals that interfere with routine activities, speech that is intermittently illogical, obscure or irrelevant, near-continuous panic or depression, spatial disorientation, an inability to establish and maintain effective relationships. Most of his documented symptoms (e.g., sleep impairments, irritability, disturbances of motivation and mood, frequent altercations) are specifically included in the criteria for a 50 percent evaluation. Moreover, the Veteran asserted in a November 2007 statement that he felt he deserved a 50 percent rating. Thus, the evidence more closely approximates a 50 percent evaluation. 

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extra-schedular consideration under 38 C.F.R. § 3.321(b)(1). 

According to Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b) ] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

The Court has held that the threshold factor for extra-schedular consideration is a finding on part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111 (2008).

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. The Veteran's main symptoms were complaints of sleep trouble, irritability, anxiousness, depression, and isolation. These symptoms were specifically contemplated in the schedular ratings that were assigned, and serve as the basis for his staged increased rating. Accordingly, the Board has determined that referral of this case for extra-schedular consideration is not in order. Thun, id.

III. TDIU

The Veteran contends his service-connected disabilities render him unable to retain or maintain gainful employment. Specifically, he claims in his November 2010 claim for TDIU that his service-connected PTSD and diabetes have caused his unemployment. 

Total disability ratings for compensation based on individual unemployability may be assigned when the combined schedular rating for the service-connected disabilities is less than 100 percent and when it is found that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age, provided that, if there is only one such disability, this disability is ratable at 60 percent or more, or if there are two or more disabilities, there is at least one disability ratable at 40 percent or more and additional disabilities to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

For the purpose of one 60 percent disability or one 40 percent disability in combination, disabilities resulting from common etiology or a single accident will be considered as one disability. The Veteran's employment history, educational and vocational attainment, as well as his particular physical disabilities are to be considered in making a determination on unemployability. It is further provided that the existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the Veteran unemployable. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

In determining whether the Veteran is entitled to a total disability rating based upon individual unemployability, neither his nonservice-connected disabilities nor his advancing age may be considered. Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the veteran can find employment. Van Hoose. 

The Veteran filed his claim for TDIU on November 19, 2010, at which time the combined disability rating for his awarded service connection for PTSD, diabetes mellitus, right lower extremity mild peripheral neuropathy associated with diabetes mellitus, left lower extremity mild peripheral neuropathy, and malaria was 70 percent. He had a 50 percent rating for his PTSD at that time. As such, he meets the schedular criteria for an award of a total disability rating for compensation based on individual unemployability under the provisions of 38 C.F.R. § 4.16(a). 

Upon review of the evidence, the Board finds little doubt that the Veteran is rendered unemployable due to his service-connected disabilities. It had been noted previously in the record that the Veteran was having conflicts at work. In a November 2010 VA examination, the Veteran reported he stopped working in September 2010, stating he "just got fed up and quit due to problems getting along with people." In a June 2011 statement the Veteran noted he chose to take an early retirement due to his disabilities. He had been working in railroad construction where it was hot, dangerous, physically demanding, and stressful. He thought it would be better for himself and those around him if he left. He had a hard time being around people. In June 2014, the Veteran's wife submitted a statement stating she believed the Veteran retired early because he did not like to interact with large groups and became incapable of working with his coworkers. This evidence adds up to the nearly foregone conclusion that the Veteran is unemployable, without consideration of his age or other nonservice-connected disabilities. A TDIU is therefore granted. 





 (CONTINUED ON NEXT PAGE)


ORDER

Entitlement to a 30 percent disability rating, but no higher, from March 20, 2003, through October 27, 2005, for service-connected PTSD is granted, subject to the laws and regulations governing payment of monetary benefits.

Entitlement to a 50 percent disability rating, but no higher, from October 28, 2005 to October 31, 2007, for service-connected PTSD is granted, subject to the laws and regulations governing payment of monetary benefits.

A total disability rating based upon individual unemployability due to service connected disabilities is granted.



____________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs